**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**RASHID WALKER,**

                              **Petitioner,**

              **v.**

**STEVEN JOHNSON & THE ATTORNEY**
**GENERAL OF THE STATE OF NEW**
**JERSEY,**

                     **Respondents.**

**Civil Action No.: 16-1849 (ES)**

**OPINION**

SALAS, DISTRICT JUDGE

Petitioner Rashid Walker, an individual confined at New Jersey State Prison in Trenton, New Jersey, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.E. No. 1, Initial Petition ("Initial Pet."); D.E. No. 3, Addendum E; D.E. No. 15-1, Supplemental Petition ("Suppl. Pet.") (collectively, the "Petition")).  Following an order to answer, Respondents Steven Johnson and the Attorney General for the State of New Jersey opposed, (D.E. No. 10, Opposition ("Opp."); D.E. No. 33 Supplemental Opposition ("Suppl. Opp.")), and Petitioner replied, (D.E. No. 14, Reply; D.E. No. 34, Supplemental Reply ("Suppl. Reply")).  Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth herein, the Court **DENIES** the Petition and **DENIES** a certificate of appealability.

# I.        BACKGROUND

The New Jersey Superior Court, Appellate Division (the "Appellate Division") provided

the following summary of facts and evidence presented at trial:[1]

> On February 18, 2002, at approximately 10:50 p.m., Javid Patel, a laundromat owner carrying a large amount of money, was fatally shot five times by two .45 caliber handguns while sitting in his car. After the shooting, [Petitioner] and his cousin, co-defendant James Walker (James), ran to the apartment of their friend, Sahim Lee. They arrived out of breath, nervous, and upset, and [Petitioner] told the occupants not to ask questions about what they had done.  At James's request, Lee agreed to store the two .45 caliber handguns belonging to [Petitioner] and James.  [Petitioner] and James then changed their jackets.
>
> On February 27, 2002, police recovered the two .45 caliber handguns from Lee's closet.  Two additional guns were found in the home of the mother of [Petitioner's] girlfriend, Shahqueena Wilson. Several persons linked [Petitioner] to those guns and to one of the .45 caliber handguns.  [Petitioner] and James were subsequently arrested.
>
> [Petitioner] admitted to police the guns in the Wilson home were his, but claimed that James had done the shooting, and that he had not seen James until around midnight.  However, [Petitioner] wrote a letter telling Wilson to perjure herself and testify to a false alibi for [him].
>
> James, in his statement to police, asserted that he and Dayron Johnson[2] shot Patel in an attempt to rob him, and that James fled alone to Lee's apartment.  James additionally asserted he saw [Petitioner] for the first time that night when [Petitioner] arrived twenty minutes later.
>
> On June 25, 2002, a Passaic County grand jury indicted [Petitioner], James, and Wilson.  The charges against [Petitioner] included first-degree  murder, [N.J. Stat.  §  2C:11-3(a)(1), (2)] and [N.J. Stat. § 2C:2-6] (count one); second-degree possession of a weapon for an

---

[1]        Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

[2]        Dayron Johnson, also referred to as "Nam" or "Johnson" in parts of the record, appears to be an acquaintance of Petitioner and James Walker.

unlawful purpose, [N.J. Stat. § 2C:39-4(a)] (count two); first-degree robbery, [N.J. Stat. § 2C:15-1] and [N.J. Stat. § 2C:2-6] (count three); first-degree felony murder, [N.J. Stat. § 2C:11-3(a)(3)] and [N.J. Stat. § 2C:2-6] (count four); second-degree possession of a weapon by a convicted person, [N.J. Stat. § 2C:39-7] (count six); four counts of third-degree unlawful possession of a weapon, [N.J. Stat. § 2C:39-5(b)] (counts seven, ten, eleven, and twelve); and two counts of third-degree receiving stolen property, [N.J. Stat. § 2C:20-7] and [N.J. Stat. § 2C:20-2(a)] (counts eight and nine).

The trial court severed the trials so James could testify on [Petitioner's] behalf. James subsequently pled guilty. Nonetheless, during [Petitioner's] first trial in 2003, [Petitioner's] attorney did not call James to testify. The prosecutor read into evidence James's statement to the police. The prosecutor argued James's statement supported the State's case against [Petitioner] because James admitted Patel was shot in an attempted robbery, even though James also claimed the other shooter was Johnson. [Petitioner] testified he had nothing to do with Patel's shooting.

The jury found [Petitioner] guilty of receiving stolen property in count eight, and weapon offenses in counts two, six, seven, and eleven, but the jury was unable to reach a verdict on the remaining counts. Notes sent to the court from the jury during deliberations indicated one juror refused to properly deliberate, would not consider the evidence, and made tangential and improper racial commentary. The court declared a mistrial on the remaining counts.

In 2004, [Petitioner] was retried on the remaining counts where he was represented by a different attorney (trial counsel). [Petitioner] did not testify at the second trial. When the State sought again to introduce James's statement, trial counsel convinced the court to exclude it based on the United States Supreme Court's recent decision in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The State then attempted to call James as a witness. However, James refused to testify, despite the Attorney General's grant of full immunity, the prosecutor's threat of prosecution for obstruction and contempt, and the trial court's order holding him in contempt and imprisoning him for six months.

The jury found [Petitioner] guilty of murder (count one), robbery (count three), felony murder (count four), receiving stolen property (count nine), and unlawful possession of a weapon (count ten). The jury acquitted [Petitioner] of possessing the .45 caliber handgun not linked to him (count twelve).

*State v. Walker*, No. A-2563-12T4, 2015 WL 3843441, at *1–2 (N.J. Super. Ct. App. Div. June 23, 2015).

Petitioner appealed his convictions and sentence. (D.E. No. 8-72, Direct Appeal Brief ("Direct Appeal Br.")). The Appellate Division affirmed his convictions but remanded for resentencing, *see State v. Walker*, Nos. A-5769-03T4, A-5952-04T4, 2008 WL 1988214 (N.J. Super. Ct. App. Div. May 9, 2008), which resulted in a sixty-year term of imprisonment with eighty-five percent parole ineligibility, *see Walker*, 2015 WL 3843441, at *2. Petitioner filed a petition for certification, (D.E. No. 39-1, Petition for Certification on Direct Appeal ("Pet. for Certification on Direct Appeal")), but the New Jersey Supreme Court summarily denied it, *see State v. Walker*, 957 A.2d 1174 (N.J. 2008).

Petitioner also filed a petition for post-conviction relief ("PCR"). (*See* D.E. No. 8-74 at 126–131, First PCR Petition).[3] The PCR trial court conducted an evidentiary hearing and denied the petition. (*See* D.E. No. 8-74 at 162, Order Denying First PCR Petition). Petitioner appealed, (D.E. No. 8-74, Counseled First PCR Appeal Br.; D.E. No. 8-75, *Pro se* First PCR Appeal Br.), but the Appellate Division affirmed, *see Walker*, 2015 WL 3843441, at *1. Petitioner filed a petition for certification, (D.E. No. 39-2, Petition for Certification on First PCR Appeal), which the New Jersey Supreme Court summarily denied on February 17, 2016, *see State v. Walker*, 130 A.3d 1247 (N.J. 2016).

On or around March 31, 2016, Petitioner initiated the instant matter by filing his petition for a writ of habeas corpus. (*See* Initial Pet.). Thereafter, Petitioner submitted an addendum to the petition, which he had accidentally failed to include in his initial filing. (*See* Addendum E). Petitioner later filed a motion for leave to file a supplemental petition to add additional claims and

---

[3] For pin cites to Docket Entry Numbers 1, 3, 8-74, and 33-1, the Court relies on the pagination automatically generated by the Court's electronic filing system.

a motion to stay the matter so that he could exhaust the claims in state court.  (*See* Suppl. Pet.; D.E. No. 19, Motion to Stay).  The Court granted Petitioner's motions.  (*See* D.E. No. 21, Order Granting Motion to Stay).

Petitioner filed a second PCR petition on March 9, 2017.  The PCR trial court denied it on January 23, 2018.  (*See* D.E. No. 33-1 at 81–84, Order Denying Second PCR Petition).  Petitioner appealed, (*see* D.E. No. 33-1, Second PCR Petition Brief), but the Appellate Division affirmed on April 11, 2019, *see State v. Walker*, No. A-3480-17T4, 2019 WL 1567809 (N.J. Super. Ct. App. Div. Apr. 11, 2019).  Petitioner submitted a petition for certification to the New Jersey Supreme Court, (*see* D.E. No. 33-4, Petition for Certification on Second PCR Appeal), which the New Jersey Supreme Court denied on December 10, 2019, *see State v. Walker*, 222 A.3d 339 (N.J. 2019).

Furthermore, at some point in 2019, Petitioner filed a motion for reconsideration of his sentence imposed in 2008.  *See State v. Walker*, No. A-2783-19, 2023 WL 2720948, at *1 (N.J. Super. Ct. App. Div. Mar. 31, 2023).  The trial court denied it on February 13, 2020.  *See id.*  The Appellate Division affirmed on March 31, 2023.  *See id.* at *3.  The New Jersey Supreme Court denied Petitioner's petition for certification on June 2, 2023.  *State v. Walker*, 295 A.3d 217 (N.J. 2023).

## II.     STANDARDS OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), amending 28 U.S.C. § 2254, a district court "shall entertain an application for writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Habeas petitioners bear the burden of

establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *Parker v. Matthews*, 567 U.S. 37, 41 (2012). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010). Specifically, district courts must defer to the "last reasoned decision of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009) (internal quotation marks and citation omitted). Moreover, a federal court reviewing the state court's adjudication under § 2254(d)(1) must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Contrary to clearly established Federal law" means (i) that the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or (ii) that the state court confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is a court's

"objectively unreasonable" application of law, not merely a court's erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico*, 559 U.S. at 773).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

## III.   DISCUSSION

The Petition asserts what the Court construes as eight separate claims. The Court addresses each claim in turn below.

### A.   Complete Defense Claim (Ground One)

In Ground One, Petitioner claims that "the trial court abused its discretion and deprived [him] of a fair trial [by] precluding [him] from admitting into evidence the written statement of co-defendant James Walker because [Petitioner] failed to waive his Sixth Amendment rights under *Crawford v. Washington*[, 541 U.S 36 (2004)]."[4]   (Initial Pet. at 48).   The Court liberally construes

---

[4]      In *Crawford*, the Supreme Court held that, pursuant to the Confrontation Clause of the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him," *see* U.S. Const. amend. IV, testimonial out-of-court statements, such as statements made during police interrogations, are inadmissible against an accused in a criminal case unless the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant, *see Crawford*, 541 U.S. at 68.

this claim as asserting that the trial court violated Petitioner's right to a meaningful opportunity to present a complete defense under the Due Process Clause of the Fourteenth Amendment and/or the Compulsory Process Clause of the Sixth Amendment.[5]  Specifically, the Court construes this claim as asserting that the trial court erred when it precluded the Defense from admitting James Walker's statement in its case-in-chief because it had earlier precluded the State from admitting the statement during the State's case-in-chief in response to Petitioner's Confrontation Clause objection.

By way of background, co-defendant James Walker initially denied any knowledge of the shooting, but he ultimately gave a written statement to the police on March 1, 2002, asserting that he and Dayron Johnson  shot Patel in an attempt to rob him.  (*See* D.E. No. 1-1 Ex. 1, James Walker's Statement).  Notwithstanding that the statement was partially exculpatory because it did not identify Petitioner as a participant, the State sought to admit the statement at both of Petitioner's trials seemingly to establish the felony murder and robbery counts, as it was the clearest evidence that the shooting, regardless of who participated, was committed during a robbery.  (*See* D.E. No. 8-55, September 24, 2004, Trial Transcript at 10:19–12:1).

At Petitioner's first trial, the parties had agreed that the statement would be admitted in the State's case-in-chief.  (*See* D.E. No. 8-42, September 8, 2004, Pretrial Motions Transcript at 89:10–16).  The prosecutor had Detective Herschel Rawls, who had interrogated James Walker, read the statement into evidence, and the Defense did not object.  (*See* D.E. No. 8-24, November

---

[5]      The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.  The Compulsory Process Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have compulsory process for obtaining witnesses in his favor."  U.S. Const. amend. VI.  The Supreme Court has interpreted these clauses as providing criminal defendants the right to "a meaningful opportunity to present a complete defense," including the right to offer the testimony of witnesses. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

17, 2003, Trial Transcript Volume II, at 168:14–181:11).

Between the first and second trial, however, the United States Supreme Court decided *Crawford*.  At Petitioner's second trial, James Walker refused to testify despite a grant of immunity, (D.E. No. 8-57, September 28, 2004, Trial Transcript Volume I, at 57:9–65:25), and the Defense objected to the admission of his written statement in the State's case-in-chief.  (D.E. No. 8-60, September 30, 2004, Trial Transcript at 62:2–20).  The trial court sustained the objection and ruled that the statement was inadmissible in the State's case-in-chief on Confrontation Clause grounds pursuant to *Crawford*.  (*Id.* at 65:1–14, 75:23–76:1).

With respect to whether the statement would be admissible if offered by the Defense, the following colloquy immediately followed:

> THE COURT:  The jury doesn't know anything about this, and the State has not been allowed to introduce the statement of a co-defendant that exculpates this defendant by reason of the new law from the United States Supreme Court in the Michael Crawford case.
>
> PROSECUTOR:  Is that your ruling, Judge?
>
> THE COURT:  It would have to be my ruling on the State's case, but I assume that the Defense is not going to offer that statement in their case.
>
> DEFENSE COUNSEL:  Well, I feel like I can't answer that, but I will answer it in a different way which I think will give you a little bit of guidance.  Do you want me to argue the statement now?
>
> THE COURT:  Yes.
>
> DEFENSE COUNSEL:  I'm prepared with the case law, and I feel like --
>
> THE COURT:  It's not admissible and I already indicated that.  On the State's offer it is not admissible.  Before I make that ruling, I would want to know from you if the Defense is going to offer it and

let you know that I don't think that I would tolerate that.

DEFENSE COUNSEL:  Wait.  You made a ruling –

THE COURT:  To object to it being allowed in on the State's offer, and then on the -- when the Defense case starts, you put it in as a statement against penal interest that doesn't implicate the Confrontation Clause.  We are not playing that game.

DEFENSE COUNSEL:  Wait.  Did you -- I mean I don't -- did you say that you ruled that the State can't put in the statement?

THE COURT:  I think I pretty much said that, didn't I?

DEFENSE COUNSEL:  So that's your ruling.  I'm prepared to argue it.

THE COURT:  I don't think you need to.  You heard me talk about the opinion in [*Crawford*]. . . . So, I don't see how I could allow the State to do that.

If I'm making that ruling, I would make it with the understanding that the Defense is not going to come forward, having raised an objection of putting that statement in.  We already have Rashid Walker's statement here, and so it is not a case where the evidence of felony murder is not in the case; and that statement, it comes in on the State's case, gives the State a clear basis to argue the grounds for felony murder, and the Defense doesn't -- wants to have the Court rule on the State's evidence when they finish and then go ahead with their evidence.  I'm not dealing with that situation anymore or some argument based on that situation.

If you want to be heard and argue your law to me that the jury shouldn't hear that statement and then come back in your case and offer the statement, that's a whole different mater.  I don't think this should be made a game of. . . .

DEFENSE COUNSEL:  I don't ever, ever play games in front of the Court . . . .

THE COURT:  I'm not suggesting that you are, but you haven't answered the question about whether or not --

DEFENSE COUNSEL:  Here is my answer.

THE COURT:   -- the Defense would present James Walker's

statement.

DEFENSE COUNSEL:  My answer is at this point, obviously, I want to wait until the close of the State's case and make that decision.  However, I want --

THE COURT:  Well, this is the close of the State's case once we finish with Sergeant Rawls.  The Prosecutor has said he's going to rest, other than for the statement of James Walker.

DEFENSE COUNSEL:  It is my understanding of the case -- well, let me say two things.  One, I want to talk to my client.  It is my reading of the case law -- and I'll be happy to give you all of the cases where the Supreme Court of New Jersey makes a clear distinction in the State offering statements against interest and the Defense offering statements against interest.  Case after case shows that distinction.  Even when a defendant will put in a statement against interest, the Prosecutor can't even cross examine about parts of the statements that are inculpatory.  That's how severe the distinction is.

Their explanation for that is that the Defense should not be precluded from putting on a defense.  Having said that, that's just my interpretation of the case law.

THE COURT: Yes, I agree with that, and there's merit to what you are saying.  I don't know that it applies here, but in concept a good deal of what you have said is, in fact, the law as I understand it.

. . .

THE COURT:  My ruling is based on the understanding that Defense is not -- that the Defense is not in the position of objecting to the statement now and then offering it this afternoon.

DEFENSE COUNSEL:  I understand that is your -- I understand that's your ruling.

THE COURT: All right.  I'm accepting that as my understanding of where the Defense is in this case.  If the Defense comes in later on and says now I want to put the statement of James Walker in,

then I would have a problem with that.

DEFENSE COUNSEL:  I understand that.

. . .

THE COURT:  Now, I want you to present whatever you want to present in the Defense case, and then I'll rule on it. . . .

. . .

THE COURT:  Now, my ruling is that with regard to the State's offer of the statement of James Walker, I will sustain the Defense's objection and will not allow the State to offer that.  Let's bring the jury out.

(*Id.* at 63:16–76:2).  Thereafter, the Defense did not seek to admit James Walker's statement.  (D.E.

No. 8-61, September 30, 2004, Trial Transcript Volume II, at 155:24–156:6).

Petitioner raised this claim on direct appeal.  (*See* Direct Appeal Br. at 28).  The Appellate

Division analyzed it as follows:

> Defendant claims that he was denied his constitutional right to present a meaningful defense inasmuch as James' statement was admissible as a declaration against interest under *N.J.R.E.* 803(c)(25).  It is undisputed that a defendant has a constitutional right to a meaningful opportunity to present a complete defense by way of compulsory process.  *State v. Garron*, 177 N.J. 148, 168-69, 827 A.2d 243 (2003), *cert. denied*, 540 U.S. 1160, 124 S. Ct. 1169, 157 L. Ed. 2d 1204 (2004).  However, as noted, trial counsel made a "strategic decision" not to seek admission of James' statement. Therefore, defendant was not denied his constitutional right of compulsory process.

*Walker*, 2008 WL 1988214, at *15.

Petitioner also raised this claim in his petition for certification to the New Jersey Supreme

Court, (*see* Pet. for Certification on Direct Appeal at 7), but it summarily denied it, *see Walker*,

957 A.2d at 1174.  Accordingly, the Court applies AEDPA's standards to the Appellate Division's

decision.  *See Simmons*, 590 F.3d at 231–32.

In his Reply and Supplemental Reply, Petitioner argues that the state courts unreasonably applied *Crawford* and that their decisions were contrary to *Chambers v. Mississippi*, 410 U.S. 284 (1973).  (*See* Reply at 22–33; Suppl. Reply at 26).  The Court disagrees.

The Appellate Division did not apply *Crawford* in affirming the trial court's decision on this ground.  Because the Appellate Division did not rely on *Crawford*, an argument cannot be made that the Appellate Division unreasonably applied *Crawford*.  That would be contrary to logic. Rather, the Appellate Division found that defense counsel made a strategic decision not to seek to admit James's statement and, therefore, there was no denial of Petitioner's right to compulsory process.  *See Walker*, 2008 WL 1988214, at *15.  Nor should the Appellate Division have applied *Crawford* because the trial court did not permit the State to admit James's statement into evidence.

The Appellate Division's determination was also not contrary to *Chambers*.  In *Chambers*, a defendant accused of murder called a witness who had previously confessed to the murder to testify.  *See Chambers*, 410 U.S. at 285–91.  When the witness repudiated the confession on the stand, the trial court denied the defendant's motion to examine him as an adverse witness based on the state's "voucher rule," which barred parties from impeaching their own witnesses.  *See id.* at 291–92, 294.  Moreover, the trial court precluded the defendant from introducing evidence that the witness had made self-incriminating statements to three other persons because the state evidentiary rules did not provide for a statements-against-penal-interest exception to the rule against hearsay.  *See id.* at 292–93.  The Supreme Court held that "under the facts and circumstances of this case[,] the rulings of the trial court deprived [the defendant] of a fair trial." *Id.* at 303.

The facts and circumstances in this matter are easily distinguishable from *Chambers*. Here, Petitioner did not call James Walker to testify or move to examine him as an adverse witness. In addition, unlike in *Chambers*, the trial court did not preclude Petitioner from admitting James Walker's statement based on hearsay or any other grounds. Instead, it essentially found that Petitioner waived any right to admit the statement by failing to move for its admission. Accordingly, the Appellate Division did not apply a rule that contradicted *Chambers*. *See Eley*, 712 F.3d at 846. Likewise, the Appellate Division did not confront a set of facts that were materially indistinguishable from *Chambers*. *Id.*

Petitioner further argues that the trial court in fact ruled that the Defense was precluded from admitting James Walker's statement, and that the Appellate Division's finding that the trial court did not rule on this issue constituted an unreasonable determination of the facts. (*See* Suppl. Reply at 25–26). As an initial matter, the Appellate Division did not expressly find whether the trial court precluded Petitioner from admitting James Walker's statement in his own case. *See Walker*, 2008 WL 1988214, at *15. Rather, the Appellate Division found that Petitioner's "trial counsel made a 'strategic decision' not to seek admission of James' statement." *Id.*

In any event, even if the Appellate Division had implicitly or expressly found that the trial court did not actually rule on whether Petitioner could admit James Walker's statement in his own case, such a finding was reasonable. Although the trial judge was not particularly clear on the extent of his ruling, he noted that there was some merit to defense counsel's initial arguments and ultimately told defense counsel "to present whatever you want to present in the Defense case, and then I'll rule on it." (September 30, 2004, Trial Transcript at 63:16–76:2). Based on this record, it would have been reasonable for the Appellate Division to find that the trial court did not actually

rule on whether Petitioner could admit James Walker's statement in his own case-in-chief.

Thus, Petitioner fails to demonstrate that he is entitled to relief under either prong of Section 2254(d).  Accordingly, the Court denies Petitioner relief on Ground One.

### B.   Ineffective Assistance of Trial Counsel Claim (Ground Two)

Next, Petitioner contends that his trial counsel was ineffective by failing to call co-defendant James Walker as a witness or move to introduce his statement.  (Initial Pet. at 57–62).

Petitioner raised this claim in his first PCR petition.  (*See* Counseled First PCR Appeal Br. at 22–32).  In affirming the PCR trial court's denial of the claim, the Appellate Division analyzed the claim as follows:

> To show ineffective assistance of counsel, defendant must meet the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and *State v. Fritz*, 105 N.J. 42, 519 A.2d 336 (1987).  First, the "defendant must show deficient performance by counsel 'so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.'"  *State v. Gaitan*, 209 N.J. 339, 349-50, 37 A.3d 1089 (2012), *cert. denied*, 568 U.S. 1192, 133 S. Ct. 1454, 185 L. Ed. 2d 361 (2013).  There is "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *State v. Arthur*, 184 N.J. 307, 319, 877 A.2d 1183 (2005).

> Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *State v. Parker*, 212 N.J. 269, 279-80, 53 A.3d 652 (2012).  This "is an exacting standard: '[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached.'"  *State v. Allegro*, 193 N.J. 352, 367, 939 A.2d 754 (2008) (alteration in original).

> Defendant argues his trial counsel was ineffective for not calling James as a witness, and for successfully objecting on the basis of *Crawford* to the prosecutor's attempt to admit James's statement.  As our Supreme Court has emphasized:

>> Determining which witnesses to call
>> to the stand is one of the most difficult

15

strategic decisions that any trial
attorney must confront. A trial
attorney must consider what
testimony a witness can be expected
to give, whether the witness's
testimony will be subject to effective
impeachment by prior inconsistent
statements or other means, whether
the witness is likely to contradict the
testimony of other witnesses the
attorney intends to present and
thereby undermine their credibility,
whether the trier of fact is likely to
find the witness credible, and a
variety of other tangible and
intangible factors.

[*Arthur, supra*, 184 N.J. at 320-21.]

Accordingly, "a court's review of such a decision should be 'highly
deferential.'" *Id.* at 321.

At the PCR hearing, trial counsel explained that she chose not to
utilize James or his statement because he provided a detailed
account of the robbery, which would defeat trial counsel's strategy
to move to dismiss the robbery count, and the dependent felony
murder count, for lack of evidence.  Trial counsel also testified that
she interviewed James and found that he "was not likeable," and that
his statement "was ridiculous on so many things that were easily
disprovable by the [S]tate."  Such strategic choices, made after a
thorough investigation, "are virtually unchallengeable." *State v.
Marshall*, 123 N.J. 1, 165, 586 A.2d 85 (1991) (internal quotation
marks omitted), *cert. denied*, 507 U.S. 929, 113 S. Ct. 1306, 122 L.
Ed. 2d 694 (1993); *State v. Green*, 274 N.J. Super. 15, 32, 643 A.2d
18 (App. Div.), *certif. denied*, 137 N.J. 312, 645 A.2d 140 (1994).
In addition, the trial court and PCR court observed James under
questioning and found he likely would not have fared well under
cross-examination and would have harmed defendant's case.

Indeed, defendant agreed on the record with trial counsel's strategic
decisions not to call James or admit his statement.  Moreover, trial
counsel's "perception of the probable impact of [James's] testimony
on the trial was obviously shared by the prosecutor," who tried to
call James as a witness and to introduce James's statement.  *Arthur,*

*supra*, 184 N.J. at 322.

> In any event, James testified at the PCR hearing that "under no circumstances [would he have] answer[ed] any questions" at trial. He refused to testify even when given immunity, and when he was held in contempt because he had his own appeal pending. For all these reasons, trial counsel was not ineffective in her strategic decision not to call James or allow the State to introduce his statement.
>
> Defendant contends that his trial counsel should have requested an adjournment until the completion of James's appeal in order to obtain James's testimony. However, Judge Reddin found trial counsel's decision not to call James to be a reasonable professional judgment, and therefore her decision not to request an adjournment was similarly reasonable. In any event, James's appeal did not end until almost three years after the second trial, and there is no reason to believe an adjournment of that length would have been granted. *See State v. Walker*, 189 N.J. 427, 915 A.2d 1050 (2007).

*Walker*, 2015 WL 3843441, at *3–4.

Petitioner also raised the claim in his petition for certification to the New Jersey Supreme Court, (*see* Petition for Certification on First PCR Appeal), but it summarily denied the claim. *See Walker*, 130 A.3d at 1247. Accordingly, the Court applies AEDPA's standards to the Appellate Division's decision. *See Simmons*, 590 F.3d at 231–32.

In his Reply, Petitioner argues that the state court's rulings were contrary to, and an unreasonable application of, *Strickland*. (*See* Reply at 47–67). Once again, the Court disagrees.

As the Appellate Division correctly identified, the two-prong test set forth in the Supreme Court's opinion in *Strickland* governs Petitioner's claims of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. To make out such a claim under *Strickland*, a petitioner must show that counsel's performance was deficient, and that counsel's allegedly deficient performance prejudiced his defense. *Id.* The Appellate Division determined that trial counsel's performance was not deficient because she made a thorough investigation of the matter, interviewed James Walker, determined that he would not be likeable or credible, and made a sound strategic decision

not to call him as a witness or introduce his statement, which Petitioner acknowledged and agreed to on the record.  *See Walker*, 2015 WL 3843441, at *3–4.  The Court finds that the Appellate Division's determination was reasonable and consistent with *Strickland*.

Petitioner's arguments to the contrary are unpersuasive.  For example, Petitioner cites *Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir. 1994) to assert that "a lawyer's failure to introduce exculpatory evidence regarding the basis of its client's most important defense cannot be deemed a permissible strategy." (Reply at 63).  What the court in *Sanders* actually stated, however, is that an attorney's "refusal even to listen to critical information from a key exculpatory witness regarding the basis of his client's most important defense cannot be deemed a permissible strategy."  *Sanders*, 21 F.3d at 1456.  That is an important distinction.  It was not merely the lawyer's failure to introduce exculpatory evidence that led the court in *Sanders* to conclude that the lawyer's performance was deficient, it was also the lawyer's failure to conduct a reasonable investigation and the lack of any conceivable strategic or tactical reason not to introduce the evidence that led the court to its conclusion.  *See id.* at 1456–59.  In this case, in contrast, trial counsel conducted a thorough review and decided not to call James Walker or admit his statement to thwart the State from demonstrating that the shooting was committed during a robbery.  Such a strategy was more than reasonable.  Accordingly, Petitioner fails to demonstrate that the Appellate Division's rulings were contrary to, or an unreasonable application of, *Strickland*, and the Court denies Petitioner relief on Ground Two.

### C.      Insufficient Evidence Claim (Ground Three)

In Ground Three, Petitioner asserts that "the trial court abused its discretion in denying [his] motion for a judgment of acquittal at the end of the State's case on Counts Three and Four charging robbery and felony murder."  (*See* Addendum E).  The Court construes Petitioner's

argument as asserting that, without the admission of James Walker's statement that the shooting occurred as part of a robbery, there was insufficient evidence to support the jury's verdict on robbery and felony murder.

At the end of the State's case at Petitioner's second trial, Petitioner's trial counsel moved the court for a directed verdict as to the felony murder and robbery counts.  (*See* September 30, 2004, Trial Transcript Volume II at 140:19–141:16).  Petitioner's trial counsel argued that, without James Walker's written statement, the State could not make out a prima facie case with regard to the elements of those two crimes.  (*See id.*).  Additionally, Petitioner's trial counsel asserted that Petitioner's statement concerning communications with Shahqueena Wilson[6] did not save the State's case because the State had argued that Petitioner's statement was untrue.  (*See id.*).

The trial court set forth the applicable standard and denied the motion as follows:

> The broad test for a determination in an application of this kind is whether the evidence at this point is sufficient to warrant a conviction of the charge involved.  Rule 3:18-1.  *State v. Reyes*, 50 N.J. 545, 458–59 tells us how to look at the context or the posture in which we should look at that determination.
>
> The question the trial judge must determine, according to *Reyes*, is whether viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> Now, there's no question of the fact that the jury could find, if they accept the evidence presented in the State's case, that the defendant, Rashid Walker, was a participant in the killing of Javid Patel from the totality of all of the evidence that they have in this case.
>
> What this killing was about is what this motion is directed at.  What we know from the totality of the evidence in this case is that the practice of custom of Javid Patel or members of his immediate family was to go each day at a particular time and empty out the

---

[6]    Shahqueena Wilson allegedly told Petitioner that James Walker spoke with her and shared "that [Nam and him] were going to rob [the victim,] [and the victim] tried to pull off and the gun just started going off."  (*See id.*).

proceeds of the day's business from this laundromat.  That's, in fact, what had happened here just immediately before he was killed.  That's what we know from the totality of the evidence, and it's what happened just minutes before he was killed.

People armed with high caliber weapons approached on each side of this vehicle.  There's ample evidence from what we have at the scene that he had the proceeds from the laundromat, which he had recently recovered only minutes before, that were on his person, and that these people armed with weapons were at the passenger's side and driver's side of his car.  He attempted to escape from them by spinning the tires of the car and attempting to get away.  That could easily be understood from the totality of the evidence in this case.

Furthermore, as the State argues, there's nothing in this case to suggest in even the tiniest way that there was any connection between the killers and Javid Patel, or any reason why he would suffer the loss of his life other than the fact that just minutes after he had retrieved the currency from this laundromat, he would be shot and killed.

So, it seems to me just from all that we know about the scene of this killing that the reasonable conclusion would be that he died because there was -- in the course of an effort being made to separate him from the money he just recovered from his family's business.

Beyond that, there is the unequivocal and very definitive statement by Rashid Walker that this was a robbery that went bad because the perpetrators panicked, and when the victim attempted to flee, which obviously he did from the evidence at the scene, they began firing into the car.  This innocent person should escape with his life, we won't have that, and so they fired from each side of the car into the car.

So based on the evidence at the scene, it seems to me that this motion would survive for the State absent the statement of Rashid Walker.  But in the presence of the statement of Rashid Walker, there's really no basis to suggest that the evidence is not sufficient to go further on the charge of robbery and felony murder.

The fact that the State is contending that Rashid was not telling the truth doesn't mean that they're contending that he was not telling the truth about the fact that this was a robbery that went bad.  The State is not suggesting that.  They're suggesting, as Mr. Hoffman has indicated, that the information didn't come to him in the way he indicated and it came to him in a different way.  I don't think the

> State is contradicting at all the proposition that there was an attempt to rob Javid Patel and that he was killed in the process of that.
>
> So, I don't find that what is presented by the Defense as an alleged contradiction is a basis to grant this application and not allow the State to go forward on the felony murder charge based upon the evidence that has been presented to the jury. For that reason, the motion is denied.

(*Id.* at 143:19–147:5).

Petitioner raised this claim on direct appeal. (*See* Direct Appeal Br. at 43). The Appellate Division found that the argument was without sufficient merit to warrant discussion pursuant to N.J. Ct. R. 2:11-3(e)(2). *See Walker*, 2008 WL 1988214, at *19.

Petitioner also raised the claim in his petition for certification to the New Jersey Supreme Court, (*see* Pet. for Certification on Direct Appeal at 6), but it summarily denied the claim. *State v. Walker*, 957 A.2d 1174 (N.J. 2008). Accordingly, the Court applies AEDPA's standards to the State Court's decision. *See Simmons*, 590 F.3d at 231–32.

In his Petition,[7] Petitioner asserts that "the lower court's decision was contrary to and/or [an] unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 [(1979)]."[8] (*See* Addendum E at 6). However, Petitioner offers no logical explanation or support as to how either state court's decision—the trial court or the Appellate Division—was contrary to or an unreasonable application of *Jackson*. Rather, Petitioner repeats his trial counsel's argument that the State contradicted itself by arguing that Petitioner's statement is false and then using it to support the elements of robbery and felony murder. (*See* Addendum E at 5–6). Such an argument goes to the

---

[7]    Petitioner did not address this claim in his Reply or Supplemental Reply.

[8]    In *Jackson*, the Supreme Court held that the proper standard to assess a sufficiency of the evidence claim brought pursuant to Section 2254 is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

weight of the evidence, which is beyond the scope of habeas review.  *See, e.g.*, *Gomez v. Pitkins*, No. 10-955, 2010 WL 7765836 (E.D. Pa. Oct. 20, 2010) ("Weight of the evidence claims are not cognizable on federal habeas review . . . .").  Moreover, as the trial court explained, the mere fact that the State had argued that Petitioner was not truthful in part of his statement does not mean that the State cannot use other parts of the statement as evidence to demonstrate the elements of robbery and felony murder without contradicting itself.  Accordingly, Petitioner fails to demonstrate that either state court's decision was contrary to or an unreasonable application of *Jackson*.

Petitioner further contends that the trial court improperly found that Petitioner's statement "constituted the 'truth' as it pertained to" the robbery and felony murder counts.  (*See* Addendum E at 5–6).  The Court finds no merit in Petitioner's argument because the trial court did not make any such finding.  Instead, it reasonably determined that, with or without Petitioner's statement, there was sufficient evidence to support the robbery and felony murder counts.  (*See* September 30, 2004, Trial Transcript Volume II at 143:19–147:5).  Accordingly, Petitioner fails to carry his burden of demonstrating that he is entitled to relief under either prong of Section 2254(d), and the Court denies him relief on Ground Three.

### D.  Ineffective Assistance of Appellate Counsel Claim Regarding Dayron Johnson's Arrest (Ground Four)

In Ground Four, Petitioner alleges that his direct appeal counsel was ineffective for failing to challenge the trial court's ruling barring his counsel from cross examining Detective Herschel Rawls about Dayron Johnson in violation of the Sixth Amendment.  (*See* Initial Pet. at 25–30).

At Petitioner's second trial, Defense counsel sought to elicit the fact that police had arrested Dayron Johnson in connection with the shooting, presumably to show that there was "somebody [else] charged with the same crime for which [Petitioner stood] on trial."  (*See* September 30, 2004, Trial Transcript at 74:1–5).  To elicit such information, defense counsel sought to question

Detective Rawls on cross-examination about a criminal complaint filed against Johnson, which was ultimately "no billed" and not pursued. (*See id.* at 58:3–7, 73:11–14). The State objected to the line of questioning, arguing that it would be misleading to the jury to suggest that there was sufficient evidence to arrest Dayron Johnson for the shooting when the sole basis for the arrest at the time was purportedly James Walker's statement to the police that he and Dayron Johnson shot Patel, which the State had been precluded from admitting on Confrontation Clause grounds. (*See id.* at 58:8–14). The trial court sustained the State's objection and precluded defense counsel from eliciting testimony that Johnson was arrested. (*See id.* at 75:14–80:9). The Court found that the line of questioning would "allow this misconception to sit in front of the jury based on information we have kept from them." (*See id.*). Thereafter, Defense counsel did not seek to elicit information about Dayron Johnson's arrest, and Petitioner's direct appeal counsel did not assert a claim regarding the trial court's decision to preclude such evidence.

Petitioner raised this claim in his first PCR petition. (*See Pro se* First PCR Appeal Br. at 16–21). The PCR trial court denied the claim, and the Appellate Division affirmed as follows:

> Defendant's pro se brief further asserts that appellate counsel was ineffective for not arguing that the trial court abused its discretion when it barred cross-examination of a detective regarding the arrest of Johnson. A trial court's evidentiary rulings are "entitled to deference absent a showing of an abuse of discretion." *State v. Brown*, 170 N.J. 138, 147, 784 A.2d 1244 (2001) (internal quotation marks omitted). "An abuse of discretion only arises on demonstration of 'manifest error or injustice,'" such as when "the trial judge's 'decision [was] made without a rational explanation.'" *State v. Belliard*, 415 N.J. Super. 51, 87, 999 A.2d 1212 (App. Div. 2010) (alteration in original), *certif. denied*, 205 N.J. 81, 12 A.3d 213 (2011).
>
> Here, the trial court sustained defendant's objection to James's out-of-court statement under *Crawford*. The court then ruled that the detective could not be cross-examined about the investigation and arrest of Johnson because James's statement was the sole basis for the detective's investigation, and therefore testimony about the

investigation would be "entirely inappropriate" and "misleading." This is a rational explanation for excluding the evidence.

The PCR court noted that appellate counsel raised many points on appeal, and found "[a]ll the valid and proper issues were raised," and "appellate [counsel] left no stone unturned." We agree. "[D]efendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue that defendant requests on appeal." *Gaither, supra*, 396 N.J. Super at 515-16. Therefore appellate counsel was not ineffective for not raising these issues.

Petitioner also raised the claim in his petition for certification to the New Jersey Supreme Court, (*see* Petition for Certification on First PCR Appeal), but it summarily denied the claim. *See Walker*, 130 A.3d at 1247. Accordingly, the Court applies AEDPA's standards to the Appellate Division's decision. *See Simmons*, 590 F.3d at 231–32.

Petitioner's Supplemental Reply argues that "the State court['s] decision was based on an unreasonable determination of the facts" because "James Walker's statement was not the only evidence that substantiated Dayron Johnson's arrest." (Suppl. Reply at 38). In support of this argument, Petitioner points to: (i) Shahqueena Wilson's March 1, 2002, statement to the police that James Walker told her that he and Dayron Johnson had shot someone, and (ii) Petitioner's own March 2, 2002, statement to the police that James Walker told him about the shooting and that Dayron Johnson participated in the shooting. (*See id.*). Both statements preceded Johnson's initial arrest.

Even if there was other evidence that provided probable cause for Johnson's arrest, Petitioner still fails to demonstrate that his appellate counsel's performance was deficient for failing to raise this issue. The two-prong test set forth in the Supreme Court's opinion in *Strickland* also governs Petitioner's claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). As noted above, to make out a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "This requires

[the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).   A petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.   To establish prejudice, a petitioner "need not establish that the attorney's deficient performance more likely than not altered the outcome" of the petitioner's case, but only that there is a reasonable probability of such an effect upon the outcome of the case.   *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).

As the Appellate Division correctly noted, appellate counsel is not required to "advance *every* argument, regardless of merit, urged by the appellant."   *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).   Generally, the presumption of effective assistance of appellate counsel will be overcome only when ignored issues are clearly stronger than those presented.   *See Smith*, 528 U.S. at 288. Here, Petitioner makes no showing that this issue was clearly stronger than the numerous other issues that his appellate counsel raised on direct appeal.   Accordingly, Petitioner fails to carry his burden of showing he is entitled to relief, and the Court denies Ground Four.

### E.   Collateral Proceeding Error Claim (Ground Five)

In Ground Five, Petitioner argues that the PCR trial court improperly denied his motion for a new trial based on purportedly newly discovered evidence—namely an affidavit from James Walker dated April 29, 2010.   (Initial Pet. at 31–37).   In the affidavit, James Walker attested:

> When called to testify[,] I will attest to the fact that the State has prosecuted the wrong man.   Myself and Nam (Dayron Johnson) are responsible for committing the crime the defendant stands convicted of.
>
> When called to testify[,] I will attest to the fact [m]yself and Nam (Dayron Johnson) seen [sic] the victim when we was [sic] driving down Grove Street.   We circled the block and parked the car on Passaic Street.   We walked to the car, I got on the sidewalk and Nam

> was in the street.  I knocked on the passenger window and I told him
> to open the window.  He started the car and rolled down the back
> passenger window.  So I stuck the gun inside and told him to get out
> the car.  He put the car in reverse.  I squeezed a shot inside the car.
> Nam let off like two or three shots then, I shot at the hood of the car
> and took off running.

(D.E. No. 34-1 Ex. 7 ("James Walker Affidavit")).

Petitioner asserted this claim in his first PCR appeal.  (*Pro se* First PCR Appeal Br. at 22–

28).  The PCR trial court found that the affidavit did not constitute newly discovered evidence:

"First of all, I don't see any newly discovered evidence.  All that James Walker was going to testify

to, if he did testify, was what he said in his statement to the police.  No newly discovered evidence."

(D.E. No. 1-1 Ex. 7, December 17, 2012, PCR Hearing Transcript at 32:2–6).  Accordingly, the

PCR trial court denied the claim.  (*Id.*).

On appeal, the Appellate Division analyzed it as follows:

> Defendant argues the [PCR] trial court improperly denied his
> motion for a new trial on the basis of newly-discovered evidence,
> namely James's proposed testimony.
>
>> Evidence is newly discovered and
>> sufficient to warrant the grant of a
>> new trial when it is "(1) material to
>> the issue and not merely cumulative
>> or impeaching or contradictory; (2)
>> discovered since the trial and not
>> discoverable by reasonable diligence
>> beforehand; and (3) of the sort that
>> would probably change the jury's
>> verdict if a new trial were granted."
>>
>> [*Nash, supra*, 212 N.J. at 549.]
>
> However, James's proposed testimony essentially repeated his
> pretrial statement to police, and thus his exculpatory information
> was not discovered after trial or undiscoverable beforehand.
>
> Moreover, defendant's trial had been severed to allow James to
> testify, and James had been immunized to remove any risk of self-

incrimination and to make James available to testify.  *Cf. State v. Robinson*, 253 N.J. Super. 346, 359-66, 601 A.2d 1162 (App. Div.), *certif. denied*, 130 N.J. 6, 611 A.2d 646 (1992).  Thus, we question whether James's testimony is properly regarded as newly-discovered, particularly as the trial court found that, in refusing to testify, James was acting in concert with defendant.

In any event, defendant failed to show James's testimony probably would have changed the jury's verdict.  *Nash, supra*, 212 N.J. at 549.  "[A] mere exculpatory statement of a co-defendant cannot by itself give rise to a new trial if that statement is clearly false or merely designed to give an accomplice a second chance for acquittal."  *Robinson, supra*, 253 N.J. Super. at 366-67.  Moreover, James "as a sentenced [exculpatory witness], had nothing to lose by exonerating [defendant] and his testimony is therefore inherently suspect."  *Id.* at 367 (internal quotation marks omitted).  As in *Robinson*, James's "story was clearly manufactured and did not have the minimum ring of truth sufficient to have the credibility issue presented to the jury."  *Ibid.*  Accordingly, "we cannot conclude that the trial judge erred in denying the motion for a new trial."  *Ibid.* (upholding the rejection of a newly-discovered evidence motion based on a co-defendant's proposed testimony that the defendant was not involved in the robbery).

Finally, trial counsel's decision not to introduce James's testimony or statement was "the type of strategic decision that should not be second guessed."  *State v. Drisco*, 355 N.J. Super. 283, 290-91, 810 A.2d 81 (App. Div. 2002), *certif. [\*13] denied*, 178 N.J. 252, 837 A.2d 1094 (2003).  It therefore cannot be the basis for a motion claiming newly-discovered evidence because "[a] defendant is not entitled to benefit from a strategic decision to withhold evidence." *State v. Ways*, 180 N.J. 171, 192, 850 A.2d 440 (2004) (citing *Drisco, supra*, 355 N.J. Super. at 290-91).

*Walker*, 2015 WL 3843441, at \*5.

Petitioner also raised this claim in his petition for certification to the New Jersey Supreme Court, (*see* Petition for Certification on First PCR Appeal), but it summarily denied the claim.  *See Walker*, 130 A.3d at 1247.  Accordingly, the Court applies AEDPA's standards to the Appellate Division's decision.  *See Simmons*, 590 F.3d at 231–32.

As an initial matter, Petitioner's claim that the PCR trial court erred in denying his motion

for a new trial based on newly discovered evidence is not cognizable on habeas review.  *See Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]lleged errors in collateral proceedings . . . are not a proper basis for habeas relief from the original conviction.").  That is because "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation."  *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998).

In any event, the Court agrees that James Walker's proposed testimony does not constitute newly discovered evidence.  As the Appellate Division reasonably found, James Walker's proposed testimony essentially reiterates his pretrial statement to the police in that he identifies Dayron Johnson as the other shooter, and thus this information was not discovered after trial or undiscoverable beforehand.  Accordingly, the Court denies Petitioner relief on Ground Five.

**F.   Ineffective Assistance of Appellate Counsel Claim Regarding Fingerprint Report (Ground Six)**

In Ground Six, Petitioner alleges that his appellate counsel was ineffective by failing to argue "that [Petitioner's] right to confrontation was violated when the prosecutor introduced a fingerprint report through the in-court testimony of an analyst who did not author, personally perform, or observe the analysis which [was performed] in the report."  (Initial Pet. at 38–43).

For context, Detective Richard Engle of the Bergen County Sheriff's Department performed a fingerprint analysis on the two .45 caliber weapons that were recovered in this case and authored a report based on the results of the analysis.  (*See* D.E. No. 8-54, September 23, 2004, Trial Transcript, Volume II at 187:13–188:9).  As part of the analysis, Detective Engle recovered one partial latent fingerprint on one of the weapons, but he determined that it had insufficient detail

to make a positive identification.  (*Id.* at 189:13–190:3).

Before the matter was first tried in 2003, Detective Engle had retired.  (*See* D.E. No. 8-58, September 29, 2004, Trial Transcript at 53:23–54:1).  At the first trial, Detective Engle's report was apparently admitted through a stipulation of the parties.

At the second trial, however, the prosecutor elicited details about the report through the testimony of Detective Ed Akins, who had performed a fingerprint analysis on the victim's car and reviewed Detective Engle's report.  (*See* September 23, 2004, Trial Transcript, Volume II at 156:12–159:2, 187:19–196:11).  It appears that the prosecutor merely sought to show that the investigation was thorough and that investigators had at least examined the weapons for fingerprints even though no usable fingerprints were obtained.  (*See id.*).  Defense counsel did not object to the testimony but rather cross-examined Detective Akins regarding whether Detective Engle attempted to "lift" the partial latent fingerprint.  (*See* D.E. No. 8-56, September 27, 2004, Trial Transcript at 7:20–30:2).

Petitioner asserted this claim on his first PCR appeal.  (*See Pro se* First PCR Appeal Br. at 12–15).  The PCR trial court denied it, and the Appellate Division affirmed the claim as follows:

> Defendant argues pro se that appellate counsel on direct appeal was ineffective for not raising the claim that his right to confrontation under *Crawford* was violated when the trial court allowed the State's expert to present hearsay testimony about fingerprint analysis by a fellow officer.  We analyze this ineffective assistance claim under the deficient performance prong of the *Strickland-Fritz* standard. *State v. Williams*, 219 N.J. 88, 99-100, 95 A.3d 701 (2014), *cert. denied*, __ U.S. __, 135 S. Ct. 1537, 191 L. Ed. 2d 565 (2015).  "The right of confrontation, like other constitutional rights, may be waived by the accused."  *Id.* at 98.  An effective attorney will sometimes "refrain from objecting to hearsay that may inure to the advantage of the defendant."  *Id.* at 99.
>
> As discussed above, trial counsel elicited favorable evidence from the State's fingerprint expert as a part of sound trial strategy.  An objection excluding his testimony based on the Confrontation

> Clause was contrary to that strategy, and an appeal asserting plain
> error was unlikely to succeed.

*Walker*, 2015 WL 3843441, at *6.

Petitioner also raised this claim in his petition for certification to the New Jersey Supreme Court, (*see* Petition for Certification on First PCR Appeal), but it summarily denied the claim. *See Walker*, 130 A.3d at 1247. Accordingly, the Court applies AEDPA's standards to the Appellate Division's decision. *See Simmons*, 590 F.3d at 231–32.

In his Petition,[9] Petitioner asserts that the Appellate Division's determination "ran a foul [sic] to the clearly established law that was settled in [*Crawford*; *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011)]"[10] because "the only person capable of conveying the necessary details concerning the partial latent print was detective Engle, and the State's failure to present him as a witness violated [P]etitioner's fundamental right to confrontation." (Initial Pet. at 42–43). However, the Court agrees with the Appellate Division that Petitioner waived his Confrontation Clause rights under *Crawford*, *Melendez-Diaz*, and/or *Bullcoming* by failing to object to the admission of the testimony regarding the fingerprint analysis at trial, and, therefore, the Appellate Division's determination was not contrary to nor an unreasonable application of those cases or *Strickland*. *See United States v. Williams*, 403 F. App'x 707, 708 (3d Cir. 2010) (concluding that an attorney can waive Confrontation Clause rights on a

---

[9]      Petitioner did not address this claim in his Reply or Supplemental Reply.

[10]      In *Melendez-Diaz* and *Bullcoming*, the Supreme Court held that affidavits reporting the results of forensic analysis and forensic laboratory reports constitute testimonial statements within the meaning of *Crawford*.

client's behalf).[11]   Accordingly, the Court will deny Petitioner relief on Ground Six.

### G.      Brady Claim Regarding Dwight Jackson (Ground Seven)

In Ground Seven, Petitioner contends that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose:  (i) the existence of a cooperation agreement between the Prosecutor's Office and Dwight Jackson; (ii) alleged exculpatory information that Jackson provided to the prosecutor; and (iii) "information concerning inducements" offered to Dwight Jackson that purportedly caused him to change his statement.  (Suppl. Pet. at 2–35).

By way of background, Dwight W. Jackson provided a written statement to the prosecutor on August 4, 2004, as part of a plea agreement for an unrelated drug crime.  (D.E. No. 15-2 Ex. 5 ("Dwight Jackson Statement")).   In the statement, Jackson said that Dayron Johnson came to Jackson's apartment on the night of the shooting and told him that Rashid and James Walker just shot somebody.  (*Id.* at 3).   Jackson also indicated that Johnson later told him details about the shooting, including that they had intended to rob "a guy in a Laundromat that had some money" and that Johnson's role was "just the driver."  (*Id.* at 9–10).

The prosecutor disclosed Jackson's written statement to defense counsel in the beginning of August 2004 just before the beginning of Petitioner's second trial.  (September 28, 2004, Trial Transcript Volume I at 197:10–21).  Before the second trial, defense counsel unsuccessfully moved to preclude the introduction of the statement on the basis of late discovery and, as a *Brady* violation, arguing that the prosecutor knew that Jackson had material information in December 2003, but failed to identify him.  (*See id.*).  However, at a hearing during the second trial, defense counsel successfully objected to the introduction of the statement based on hearsay, and the trial

---

[11]      There is nothing in the record to suggest that Petitioner timely dissented from his trial counsel's decision not to object to the testimony regarding the fingerprint analysis, and, as the Appellate Division found, not objecting to the testimony was part of a sound trial strategy.  *See id.*

court precluded the State from admitting it.  (*See id.* at 197:23–216:11; September 29, 2004, Trial Transcript at 3:4–14:16).

Petitioner now claims, however, that on or around November 18, 2016, he first discovered that the prosecutor had entered into a cooperation agreement with Jackson.  (Suppl. Pet. at 4).  Petitioner also claims that Jackson initially provided the prosecutor with exculpatory information but later changed his testimony to receive the benefits of the cooperation agreement.  (*Id.* at 4–6).

In support of his arguments, Petitioner submits an affidavit from Dwight Jackson, signed on January 17, 2017, in which Jackson states that he initially told the prosecutor in November 2003, "First of all, you are prosecuting the wrong man.  [Dayron Johnson] is trying to blame everything on [James Walker] and [Petitioner], but [Johnson] really was with [James Walker] and [Johnson] really was driving that night."  (D.E. No. 15-2 Ex. 3, Dwight Jackson Affidavit ¶¶ 6–7).  Jackson also contends in the affidavit that in July of 2004, he communicated with the prosecutor that "Dayron Johnson told [Jackson] himself that he and [James Walker] just shot somebody." (*Id.*).  According to the affidavit, however, the prosecutor essentially enticed him into changing his testimony to inculpate Petitioner in exchange for recommending a sentence of probation.  (*Id.* ¶¶ 8–12).  Thereafter, Jackson provided his written statement to the prosecutor.  (*Id.*).

Petitioner raised this claim in his second PCR petition.  (*See* Order Denying Second PCR Petition).  The PCR trial court denied it as time barred and procedurally defaulted.  (*Id.*)  Petitioner appealed, but the Appellate Division affirmed for the same reasons.  *Walker*, 2019 WL 1567809, at *4–6.  Petitioner also raised the claim in his petition for certification to the New Jersey Supreme Court, (*see* Petition for Certification on Second PCR Appeal), but it summarily denied the claim. *See Walker*, 222 A.3d at 339.

32

Although it appears Petitioner's habeas claim is procedurally defaulted, the claim is also meritless for other reasons.[12]  Under *Brady*, a violation of a petitioner's due process rights occurs if "(1) the evidence at issue is favorable to the accused, because either it is exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'"  *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011).  Evidence is material if there is "a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different."  *Wilson v. Beard*, 589 F.3d 651, 665 (3d Cir. 2009) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

With respect to Petitioner's claim that the prosecutor failed to disclose the existence and details of a cooperation agreement between the Prosecutor's Office and Dwight Jackson, Petitioner fails to demonstrate that either are exculpatory or impeaching.  Neither the existence nor the details of the agreement, including any benefits Jackson received, has any impeachment value because Jackson did not testify at Petitioner's trials and his written statement was not admitted.  Nor are they exculpatory because the agreement involved Jackson's unrelated drug crime and, therefore, did not constitute evidence of third-party guilt.

As to Petitioner's claim—that the prosecutor failed to disclose the alleged exculpatory statements Jackson contends he made in November 2003 and in July 2004 prior to his written statement—Petitioner fails to demonstrate, by a reasonable probability, that the result of trial would have been different had the statements been disclosed.  As an initial matter, the statements constitute hearsay within hearsay.  Petitioner does not set forth, and the Court does not discern,

---

[12]      Where, as here, the state courts have not "reached the merits of a claim thereafter presented to a federal habeas court," the applicable standard is generally "*de novo* review over pure legal questions and mixed questions of law and facts . . . ."  *See Taylor v. Horn*, 504 F.3d 416, 429 (3d Cir. 2007).  Even on *de novo* review of a habeas claim, however, the state court's factual determinations are still presumed to be correct, unless a petitioner rebuts them with clear and convincing evidence.  *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).

any applicable hearsay exception.  Thus, it is unlikely the statements would have been admissible at trial.

Even if the statements were admissible, it is not clear how Petitioner would have admitted the statements as evidence at trial because the statements were unrecorded, and Petitioner makes no showing that Jackson would have agreed to provide a written statement or testify at the time of the trial.  Jackson's certification merely indicates a present willingness to assist Petitioner, but Jackson does not certify that he would have agreed to provide a statement or testify at the time of trial in support of Petitioner and forgo the benefits of the cooperation agreement.  (*See* Dwight Jackson Affidavit).  To the contrary, Jackson certifies that he "do[es] not regret helping the Prosecutor's Office because I benefitted from the agreement . . . ."  (*Id.* at ¶ 13).

Further, assuming that Jackson's testimony was admissible, and that Jackson was available and willing to testify at the time of trial, Jackson's later written statement to the prosecutor would have become admissible as a prior inconsistent statement.  This would have cast serious doubt as to Jackson's credibility and provided the prosecution with more evidence that the shooting occurred during a robbery.

Finally, Petitioner fails to argue or demonstrate that the disclosure of Jackson's statement would have led to other admissible and material evidence.  Jackson did not witness the shooting, and there is nothing in the record to suggest that Dayron Johnson would have been willing or available to testify on Petitioner's behalf.  Thus, Petitioner fails to demonstrate that the results of the trial would have been different had the prosecutor disclosed the alleged exculpatory statements Jackson contends he made.

For the reasons above, Petitioner fails to demonstrate that the prosecutor violated *Brady* by failing to disclose the existence or details of the cooperation agreement or Jackson's alleged

exculpatory statements.  Accordingly, the Court denies Petitioner relief on Ground Seven.

###### H.      Brady Claim Regarding Dayron Johnson (Ground Eight)

In Ground Eight, Petitioner contends that the prosecutor violated *Brady* by failing to disclose Dayron Johnson's guilty plea, cooperation agreement, and other "pertinent documents related to Johnson's case." (Suppl. Pet. at 36–44).

Unlike his other claims, Petitioner failed to exhaust this claim before the state courts.  A federal court may not grant a writ under Section 2254 unless the petitioner has first "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see also Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997), *cert. denied*, 532 U.S. 919 (2001).  To meet the exhaustion requirement, a petitioner must "fairly present," his federal claims to each level of the state courts empowered to hear them, either on direct appeal or in collateral post-conviction proceedings.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999). This means that the petitioner must "present a federal claim's factual and legal substance to the state courts in a manner that puts [the state courts] on notice that a federal claim is being asserted." *McCandles v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  "It is not sufficient that all the facts necessary to support the federal claim were before the state courts."  *Anderson v. Harless* 459 U.S. 4, 6 (1982).  This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'"  *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981))).  A petitioner generally bears the burden to prove all facts establishing exhaustion.  *See Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

Here, Petitioner raised this claim in his second PCR petition, but the trial court denied it as untimely and procedurally defaulted along with his other *Brady* claim.  (*See* Order Denying Second PCR Petition).  Petitioner also asserted it on appeal of the denial of his second PCR petition, but

the Appellate Division affirmed for the same reason.  *Walker*, 2019 WL 1567809, at *4–6. However, Petitioner failed to raise the issue in his petition for certification to the New Jersey Supreme Court.  (*See* Petition for Certification on Second PCR Appeal).  Accordingly, this claim is unexhausted.

Nevertheless, a habeas court can, if appropriate, deny a petitioner's unexhausted claims on the merits pursuant to 28 U.S.C. § 2254(b)(2).  *See Taylor*, 504 F.3d at 427.  Accordingly, the Court will analyze this claim on the merits pursuant to Section 2254(b)(2).[13]

For context, although the original charges against Johnson were "no billed," or not pursued, Johnson was subsequently rearrested and charged with first-degree felony murder and robbery for his role in the shooting.  (*See* D.E. No. 15-2 Ex. 7, Johnson Judgment of Conviction).  In 2006, Johnson pleaded guilty to second-degree robbery as part of a plea deal with the prosecutor in exchange for the promise to give a recorded statement and to testify against Petitioner and/or James Walker should the need arise as a result of their appeals.  (*See id.*).  Petitioner contends that the prosecutor violated *Brady* by failing to disclose information pertaining to Johnson's guilty plea, cooperation agreement, and case notwithstanding that Petitioner's second trial had concluded by the time Johnson entered his plea.

Neither the Supreme Court nor the Third Circuit has clarified whether and for how long a prosecutor's *Brady* duty to disclose continues after trial.  Other circuits are split on the issue. *Compare Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (determining that *Brady* duty applies after conviction), *and Leka Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (*Brady* duty includes information obtained after trial), *with Bell v. Bell*, 512 F.3d 223, 234 (6th Cir. 2008) (declining to extend *Brady* to post-trial witness's favorable treatment), *and United States v.*

---

[13]    The Court applies *de novo* review over pure legal questions and mixed questions of law and facts.  *See supra* note 10.

*Maldonado-Rivera*, 489 F.3d 60 (1st Cir. 2007) (determining that evidence unknown to prosecutor until after trial is not *Brady* material).

Nevertheless, even assuming the prosecutor's duty to disclose *Brady* material continued beyond Petitioner's trial, Petitioner fails to demonstrate that material pertaining to Johnson was favorable to him.   *See Breakiron*, 642 F.3d at 133.   In his Supplemental Reply, Petitioner essentially argues that Dayron Johnson's guilty plea would have established that another person had pleaded guilty to the crimes for which Petitioner was charged, thus suggesting his innocence: "Dayron Johnson's guilty plea [ ] would have established that . . . the man that James Walker said he committed the crime with . . . pled guilty to the . . . crime committed against Javid Patel." (Suppl. Reply at 74).   The Court disagrees.

In his factual proffer, Johnson admitted that on the night of the shooting, Johnson, Petitioner, and James Walker were together in a car that Johnson had obtained from a friend.   (*See* D.E. No. 15-3 Ex. 8, Johnson Allocution Hearing Transcript at 14:6–21:7).   Johnson testified that he was driving the car, and that Petitioner and James Walker were in the back.   (*See id.*).   Johnson testified that Petitioner said he needed some money, and, at some point, Petitioner told him to stop the car.   (*See id.*).   Johnson testified that Petitioner and James Walker got out of the car, and Johnson observed that Petitioner had a black gun on him when he got out of the car.   (*See id.*).   Johnson testified that he heard at least four shots at which point he fled the scene in the car.   (*See id.*).

Thus, Johnson's guilty plea and factual proffer would not suggest, as Petitioner contends, that someone else admitted to the crimes for which he had been charged, thereby implying Petitioner's innocence.   Rather, they tend to show that all three were involved, and that Petitioner

was one of Javid Patel's shooters.  (*See id.*).

As such, Petitioner fails to demonstrate that information pertaining to Johnson's guilty plea, cooperation agreement, or other unspecified documents were favorable to him or that the prosecutor violated *Brady* by failing to disclose them.  Accordingly, the Court denies Petitioner relief on Ground Eight.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner's claims are all without merit and jurists of reason would not disagree with this Court's denial of Petitioner's habeas petition.  Accordingly, Petitioner is denied a certificate of appealability.

## V.    CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is **DENIED**, and Petitioner is **DENIED** a certificate of appealability.  An appropriate order follows.

Dated:  July 18, 2024                                    s/Esther Salas_____
                                                        **Esther Salas, U.S.D.J.**